UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TOWAUN COLEMAN,

                              Plaintiff,

   v.                                                                                         9:24-CV-0455
                                                                                             (AMN/CFH)

J. HAMILTON, et al.,

                              Defendants.
_____

APPEARANCES:

TOWAUN COLEMAN
Plaintiff, pro se
07-A-2215
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021


ANNE M. NARDACCI
United States District Judge

**DECISION and ORDER**

I.      **INTRODUCTION**

      Plaintiff Towaun Coleman commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 5 ("IFP Application"). By Decision and Order entered on May 28, 2024, the Court granted plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed the pleading for failure to state a claim upon which relief may be granted. Dkt. No. 7 ("May 2024 Order"). In light of plaintiff's pro se status, the Court afforded

1

him thirty (30) days to file an amended complaint if he wished to continue with this action.  *Id*. at 16-18.

Presently before the Court is an amended complaint filed by plaintiff.  Dkt. No. 9 ("Am. Compl.").

## II.     SUFFICIENCY OF THE AMENDED COMPLAINT

### A.     The Complaint and May 2024 Order

In his original complaint, plaintiff alleged that defendant Corrections Sergeant Hamilton falsely charged him with disciplinary infractions while incarcerated at Mid-State Correctional Facility, and defendant Mid-State Correctional Facility Superintendent John Doe found him guilty of those charges, which resulted in his termination from a prison program and restrictive confinement for over 100 days.  Compl. at 3-4.

The complaint was construed to assert Eighth Amendment excessive restrictive confinement claims and Fourteenth Amendment due process claims against the named defendants.  *See* May 2024 Order at 6.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), each of plaintiff's claims were dismissed for failure to state a claim upon which relief may be granted.  *Id*. at 7-16.

### B.     Review of the Amended Complaint

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed

at length in the May 2024 Order and it will not be restated in this Decision and Order.  *See* May 2024 Order at 3-5.

Plaintiff's amended complaint reasserts claims arising out of his alleged receipt of false disciplinary charges.  *See generally*, Am. Compl.  In addition to naming Hamilton and Superintendent Doe, the pleading also names Hearing Officer Barbosa as a defendant.  *Id*. at 2, 15.  The following facts are set forth as alleged in the amended complaint.

Plaintiff has been incarcerated since 2007.  Am. Compl. at 3.  At no point prior to 2023 had plaintiff ever been found guilty of possessing a weapon or assaulting a staff member.  *Id*.  In addition, although plaintiff was found guilty on one occasion several years earlier of violating a prison rule prohibiting "gang" affiliation, that charge was based on "an email correspondence between himself and an unincarcerated person" to whom he called a "pet" name based on their "long time" relationship.  *Id*.

On or about August 26, 2023, plaintiff was transferred from a "Maximum A classified facility" to a "Medium" security facility for the first time.  Am. Compl. at 3-4.  Two weeks after arriving at Mid-State Correctional Facility, plaintiff was "approached" by defendant Corrections Sergeant J. Hamilton "on the walkway of the facility grounds."  *Id*. at 4.  Defendant Hamilton "then escorted plaintiff to his office" for questioning.  *Id*.

Once inside the office, defendant Hamilton accused plaintiff of "mov[ing] around the facility differently" and stated that he could tell plaintiff "came from behind the wall."  Am. Compl. at 4.  Plaintiff then asked defendant Hamilton the purpose of their meeting, and defendant Hamilton stated that he "just wanted to get to know [plaintiff]" and "measur[e] [him] a little."  *Id*.  Defendant Hamilton further advised that he had "received a number of 'slips' on [plaintiff] from some of [his] C.I.s[.]"  *Id*.  Plaintiff responded by telling defendant Hamilton that

3

he does not know anyone at the facility.  *Id*.  From there, defendant Hamilton questioned plaintiff about knowing an inmate named "J.J." and stated that this inmate informed him that plaintiff was "trying to get him cut[.]"  *Id*.  Plaintiff denied knowing this inmate and stated that he did not "have time for these little games[.]"  *Id*.

On or about September 11, 2023, defendant Hamilton approached plaintiff as he was exiting the facility gym for another meeting in his office.  Am. Compl. at 5.  Upon arriving in the office, defendant Hamilton informed plaintiff that he received "another slip from a C.I. named 'DOT'" who accused plaintiff of "trying to get him cut[.]"  *Id*. at 5-6.  Plaintiff advised defendant Hamilton that he does not know this inmate, does not deal in drugs or gamble, and has "no need to cut anyone[.]"  *Id*. at 6.  Defendant Hamilton then asked plaintiff for his gang affiliation.  *Id*.  In response, plaintiff stated, "Sgt. I've been in prison for half my life fighting every day to get home to my love[d] ones[.] I am a 43 year old man that does not have time for childish things such as being in a gang."  *Id*.

Defendant Hamilton advised plaintiff to "be careful" because the "jail is crawling with gang activities" and proceeded to show him a series of photographs of inmates at the facility.  Am. Compl. at 6.  Plaintiff did not know any of the inmates shown in the photographs and told that to defendant Hamilton.  *Id*.  Defendant Hamilton then asked plaintiff to keep his ears open if he finds himself among any of the inmates in the photographs.  *Id*. at 7.  Plaintiff informed defendant Hamilton that he did not feel comfortable with the conversation and asked to leave.  *Id*.

Later in the week, defendant Hamilton entered plaintiff's housing unit, called out his name in front of other inmates while standing in the doorway, and motioned for plaintiff to approach.  Am. Compl. at 7.  Plaintiff approached defendant Hamilton and was then escorted

4

to an empty room where defendant Hamilton accused plaintiff of having a "kid cut on the walkway the other day[.]" *Id*. After plaintiff denied having any involvement in the incident, defendant Hamilton stated that he did not care, but wanted to know what plaintiff knew about a rumored war between three gangs. *Id*. at 7-8. Plaintiff once again told defendant Hamilton that he is not a gang member and does not know anything about the rumor, and asked defendant Hamilton to question him in the presence of other inmates moving forward so that he did not look like a snitch. *Id*. at 8.

On the morning of September 29, 2023, defendant Hamilton visited plaintiff in his housing unit while he was sleeping and "demand[ed] that plaintiff get[ ] up immediately and follow him" to a nearby empty room. Am. Compl. at 8-9. Upon arriving in the room, defendant Hamilton questioned plaintiff about another inmate at the facility and asked what he knew about "a 'hit' that is supposed to be placed on [a sergeant's] head[.]" *Id*. at 9. Plaintiff denied knowing the inmate in question, or anything about a "hit" on a sergeant. *Id*.

A few hours later, an unknown corrections officer entered plaintiff's housing unit, placed him in handcuffs, and escorted him to the special housing unit ("SHU"). Am. Compl. at 10. Once there, plaintiff was strip frisked and placed in a cell for a matter of minutes, after which time he was escorted to a transport van, taken to Marcy Correctional Facility, and brought to a SHU cell. *Id*.

On or around this date, plaintiff "received . . . [a] 'gang' related [misbehavior report,] which amounted to a Tier III infraction." Am. Compl. at 3. The misbehavior report charged plaintiff with "violent conduct," "assault on staff," "threats," and "gangs" based on allegations that he was "involved in a conspiracy to attack a member of Mid-State's security staff." *Id*. at 10, 12.

5

On October 4, 2023, plaintiff's Superintendent's Hearing began before defendant Hearing Officer Barbosa. Am. Compl. at 10. During the hearing, plaintiff raised objections regarding false statements contained in the misbehavior report, the credibility of the confidential informant whose statements resulted in the issuance of the misbehavior report, and certain procedural matters, including that he was "denied the opportunity to arrange a list of questions for the hearing officer to ask the C.I." or otherwise challenge testimony and evidence presented by the C.I. outside of plaintiff's presence. *Id*. at 11.

At the conclusion of the hearing, defendant Barbosa found plaintiff guilty of all charges in the misbehavior report except the "threats" charge based on a determination that the testimony from defendant Hamilton and the confidential informant was credible. Am. Compl. at 10, 12. Defendant Barbosa reached this conclusion despite plaintiff denying that he was involved in the alleged conspiracy to assault a staff member and defendant Hamilton testifying during the hearing that his confidential sources have, in the past, provided "erroneous or unsubstantiated" information. *Id*. at 12. Defendant Barbosa also stated in his hearing decision that he "independently assessed the reliability of the confidential information [that defendant] Hamilton relied upon to author the [misbehavior report]" and found that information, and its source, to be "substantially reliable[.]" *Id*. at 13.

Plaintiff appealed defendant Barbosa's disciplinary determination to the Director of Special Housing. Am. Compl. at 14. On December 19, 2023, "plaintiff received a time sanction modification, releasing [him] out of S.H.U. after . . . 104 day[s.]" *Id*. On January 30, 2024, plaintiff "received an[ ] administrative reversal" of the hearing determination. *Id*.

6

During plaintiff's confinement in the SHU, he was denied privileges afforded to incarcerated individuals in general population and "forced to eat a soy product" that "caused him sever[e] constipation and stomach cramping[.]"  Am. Compl. at 14-15.

In addition to the aforementioned individuals, plaintiff also names Mid-State Correctional Facility Superintendent Doe as a defendant based on this official's alleged failure to independently investigate the allegations made against plaintiff by the confidential informant or "oversee" subordinate officials.  Am. Compl. at 2, 15.

Liberally construed, the allegations in the amended complaint assert the following Section 1983 claims: (1) a First Amendment retaliation claim against defendant Hamilton; (2) Fourteenth Amendment due process claims against each of the named defendants; (3) Fourteenth Amendment equal protection claims against each of the named defendants; and (4) state law defamation and slander claims.

Plaintiff seeks money damages and injunctive relief.  Am. Compl. at 14.  For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

**C.    Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a

7

procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Superintendent Doe

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."  *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)).

8

Here, plaintiff names Superintendent Doe as a defendant based on allegations that this official failed to independently investigate the accusations made against plaintiff by the confidential informant or "oversee" subordinate officials.  Am. Compl. at 2, 15.

As an initial matter, the law is well-settled that a prison inmate has no constitutional right to an independent investigation into alleged wrongdoing.  *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)).

In addition, even assuming that Superintendent Doe learned about the disciplinary charges brought against plaintiff at some point before he was released from restrictive confinement, deferring to the administrative process is not a basis for finding personal involvement in the alleged wrongdoing.  *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("We see no reason why [the Superintendent] should have intervened in advance of [a Tier III hearing] in which Colon was to be given the opportunity to substantiate the claim that he made in his letter. We therefore conclude that no reasonable jury could have held Senkowski liable."); *Verdi v. Farah*, No. 9:22-CV-0825 (BKS/CFH), 2022 WL 17818629, at *3 (N.D.N.Y. Dec. 20, 2022) ("[E]ven assuming defendant Farah received and read plaintiff's letters, his decision to defer to Dr. HLA-PE-WJN's medical determination and the grievance

process, which included another opinion expressed by a medical professional, does not plausibly suggest deliberate indifference to plaintiff's serious medical needs." (citing *Colon*, 58 F.3d at 873)); *Morrow v. Vanderwerff*, No. 9:19-CV-0555 (DNH/DJS), 2019 WL 13455972, at *6 (N.D.N.Y. July 23, 2019) ("Here, it is clear from the allegations in the complaint, and documents attached thereto, that Morrow's grievances regarding his law library conditions, and employment and termination as a paralegal law clerk, were considered and denied by officials other than defendant Ost. The fact that defendant Ost allegedly ignored Morrow's appeals, and in this regard deferred to the existing administrative process, is not enough to plausibly suggest her personal involvement in the alleged retaliatory termination."); *cf. Tubbs v. Venettozzi*, No. 19-CV-126, 2019 WL 2610942, at *8 (N.D.N.Y. June 26, 2019) (holding that allegations that Superintendent was made aware of complaints about due process violations and allowed a custom of due process violations in disciplinary hearings failed when plaintiff only alleged two such incidents).

In light of the foregoing, plaintiff's Section 1983 claims against Superintendent Doe are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

### 2. Retaliation Claim

Liberally construed, the amended complaint alleges that defendant Hamilton issued plaintiff a false misbehavior report and testified against him at a disciplinary hearing based on plaintiff's refusal to provide this official with information requested about other inmates.

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a

constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's retaliation claim against defendant Hamilton survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 3.  Due Process Claims Against Hamilton and Barbosa

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).

While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present

documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia*, *Wolff*, 418 U.S. at 563-67). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing, *inter alia*, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's disciplinary due process claims against defendants Hamilton and Barbosa survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Equal Protection Claims Against Hamilton and Barbosa

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment.

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).  However, "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Id*. (internal quotation marks omitted); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (explaining that "[t]here are some forms of state action, . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments" and "[i]n such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted").

Here, plaintiff's equal protection claim is based on allegations that he was "singled out and treated different than the rest of the incarcerated population" when he was issued a false misbehavior report by defendant Hamilton, i.e., a class-of-one theory.  The amended complaint, however, fails to explain how plaintiff believes he was treated differently than any other similarly situated inmate.  Indeed, plaintiff does not identify any inmates who were treated differently than him under similar circumstances.

Furthermore, as the Supreme Court noted in *Engquist*, because the alleged wrongdoing involves "discretionary decisionmaking based on a vast array of subjective,

14

individualized assessments[,]" allowing plaintiff's "challenge based on the arbitrary singling out . . . would undermine the very discretion that . . . state officials are entrusted to exercise" under the circumstances.  553 U.S. at 603-04 (explaining that a "class of one" claim cannot exist in a situation involving "a traffic officer" who, for non-discriminatory reasons, issues a speeding ticket to one person driving above the speed limit and not others because "allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action"); *see also Nali v. Ekman*, 355 Fed. App'x 909, 912-13 (6th Cir. 2009) (dismissing equal protection claim based on allegations that "caucasian" officials "'conspir[ed]' to issue" the plaintiff, a "non-caucasian" individual, "two major misconduct infractions" for "being in the chow hall at the wrong time" even though "'no one else was ticketed' for similar conduct" because there were no allegations in the complaint no "that the people not disciplined were similarly situated and of a different race").

Accordingly, plaintiff's equal protection claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5.  State Law Claims

"[F]ederal courts [may] hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dep't. of Corr. v. Schacht*, 524 U.S. 381, 387 (1998); 28 U.S.C. § 1367(a).  State law and federal claims are part of the same case or controversy when they "derive from a common nucleus of operative fact." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004); *see also City of Chicago v.*

*Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).  When there is a common nucleus, a federal court's exercise of supplemental jurisdiction, "while not automatic, is a favored and normal course of action."  *Promisel v. First Am. Artificial Flowers*, 943 F.2d 251, 254 (2d Cir. 1991).

Liberally construed, plaintiff's state law claims are based on statements made by defendant Hamilton in a misbehavior report, and during plaintiff's disciplinary hearing, and by defendant Barbosa in a disciplinary decision.  Thus, there is a common nucleus between the federal and state law claims.

"Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  Similarly, "[t]he elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege."  *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001) (citing *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)).

At this stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's state law claims against defendants Hamilton and Barbosa survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### III.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk update the docket to add Hearing Officer Barbosa as a defendant; and it is further

**ORDERED** that the following claims **SURVIVE sua sponte review** and require a response: (1) plaintiff's First Amendment retaliation claim against defendant Hamilton; (2) plaintiff's Fourteenth Amendment due process claims against defendants Hamilton and Barbosa; and (3) plaintiff's state law defamation and slander claims against defendants Hamilton and Barbosa; and it is further

**ORDERED** that all remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, as set forth above; and it is further

**ORDERED** that the Clerk shall **TERMINATE** Superintendent Doe from this action; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with two copies of the amended complaint, to the United States Marshal for service upon the defendants Hamilton and Barbosa.  The Clerk shall also forward a copy of the summons and amended complaint by electronic mail to the New York State Attorney General's Office, together with a copy of this Decision and Order; and it is further

**ORDERED** that upon the completion of service, a response to plaintiff's amended complaint be filed by defendants Hamilton and Barbosa, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated: September 4, 2024
       Albany, NY

_____
Anne M. Nardacci
U.S. District Judge