**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TOWUAN COLEMAN,

                              Plaintiff,

        v.

J. HAMILTON AND BARBOSA,

                              Defendants.

No. 9:24-CV-455
(AMN/PJE)

---

**APPEARANCES:**                        **OF COUNSEL:**

Towuan Coleman
Edgecombe Residential Treatment Facility
611 Edgecombe Avenue
New York, New York 10032
Plaintiff pro se

NYS Office of The Attorney General       CHI-HSIN E. ENGELHART, ESQ.
State Capitol                            Assistant Attorney General
Albany, New York 12224
Attorney for defendants

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

       Plaintiff pro se Towuan Coleman ("plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges

that defendants J. Hamilton ("Hamilton") and Barbosa violated his First and Fourteenth

Amendment constitutional rights and defamed and slandered him under New York State

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y. L.R. 72.3(c).

law.  *See* Dkt. No. 9 at 1-2.[2]  Presently before the Court are (1) defendants motion for (a) summary judgment on plaintiff's First Amendment retaliation claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, and (b) dismissal of plaintiff's state law claims for failure to state a cause of action pursuant to Rule 12(b)(1); and (2) plaintiff's cross-motion for an evidentiary hearing on his First Amendment retaliation claim.[3]  *See* Dkt. No. 26; Dkt. No. 30-1 at 3.  For the following reasons, it is recommended that defendants' motion be granted in its entirety and plaintiff's cross-motion for an evidentiary hearing be denied.

## I. Facts[4]

In support of their motion, defendants filed a Statement of Material Facts.  *See* Dkt. No. 26-10.  As will be discussed below, plaintiff failed to properly respond to defendants' Statement of Material Facts.  *See* Dkt. No. 30-2.

### A. N.D.N.Y. Local Rule 56.1

N.D.N.Y. Local Rule 56.1(b) requires that a party opposing summary judgment file a response to the movant's Statement of Material Facts, "admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs."  "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *Id.*

---

[2] Plaintiff initially brought claims against "Superintendent Doe" and alleging that his Eighth Amendment and Fourteenth Amendment equal protection rights were violation.  *See* Dkt. No. 9 at 1-2.  On initial review, the Court sua sponte dismissed the Eighth Amendment and Fourteenth Amendment equal protection claims and terminated "Superintendent Doe" from the action pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  *See* Dkt. No. 10.

[3] The undersigned notes that plaintiff's Fourteenth Amendment due process claims survived initial review but are not the subject of defendants' motion.

[4] The undersigned's citations to filings connected with this motion refer to the pagination located at the header of each page, which the Court's electronic filing and case management program generated, rather than the individual pagination of each document.

(emphasis omitted).  Here, plaintiff filed a response to defendants' motion for summary judgment.  *See generally* Dkt. No. 30.  However, plaintiff's submission is not properly responsive to defendants' Statement of Material Facts because it does not admit or deny defendants' "assertions in a short and concise statement, in matching numbered paragraphs."  N.D.N.Y. L.R. 56.1(b); *see* Dkt. No. 30-2.  Instead, plaintiff's response reiterates the facts from the complaint, contests the factual attestations of the sworn declarations submitted in support of defendants' motion, and raises factual and legal arguments in opposition to defendants' motion.  *See* Dkt. No. 30-2.  Further, plaintiff does not cite to the record for the facts he sets forth, in violation of Local Rule 56.1(a).  *See id.*; *see also* N.D.N.Y. L.R. 56.1(a) ("Each fact listed shall set forth a specific citation to the record where the fact is established.).

The Court is not required to "perform an independent review of the record to find proof of a factual dispute."  *Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002)).  Although the Local Rules provide that the undersigned shall deem admitted any facts that the nonmoving party fails to "specifically controvert," and pro se plaintiffs are expected to abide by the Local Rules, pro se plaintiffs are also afforded special solicitude in this District and Circuit.  *See* N.D.N.Y. L.R. 56.1(b); *see also Treistman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).

Accordingly, in deference to plaintiff's pro se status, the Court will independently review the record when evaluating defendants' motions for summary judgment and dismissal, and "treat [plaintiff's] opposition as a response to" defendants' Statement of Material Facts. *Robinson v. Mirza*, No. 9:21-CV-1322 (DNH/CFH), 2024 WL 4464280, at

*7 (N.D.N.Y. July 30, 2024), *report and recommendation adopted sub nom. Robinson v. Mizra*, No. 9:21-CV-1322, 2024 WL 4249222 (N.D.N.Y. Sept. 20, 2024) (citing *Johnson v. Lew*, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017)) ("Out of special solicitude to [the p]laintiff as a *pro se* civil rights litigant . . . the Court will treat his opposition as a response to [the d]efendant's []Statement . . . ." ); *see also Perry v. Ogdensburg Corr. Fac.*, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016)[5] ("[A]lthough [p]laintiff failed to respond to the statement of material facts filed by [d]efendants as required under Local Rule[s], the Court would invoke its discretion to review the entire record when evaluating the parties' respective [m]otions for summary judgment.").

## B.  **Undisputed Facts**

Plaintiff was incarcerated at Mid-State Correctional Facility ("Mid-State CF") on September 29, 2023.  *See* Dkt. Nos. 26-10 at 1; 26-2 at 3; 30-1 at 3.  Plaintiff was incarcerated at Gouverneur Correctional Facility ("Gouverneur CF") on October 12, 2023. *See* Dkt. Nos. 26-10 at 1; 30-10 at 1; 26-5 at 3.  At all relevant times, there was a fully functioning grievance procedure available to all residents at Mid-State CF and Gouverneur CF.  *See* Dkt. Nos. 26-2 at 1; 26-5 at 3; 26-8 at 3.  At all relevant times, Hamilton was a sergeant at Mid-State CF.  *See* Dkt. No. 9 at 10-12; Dkt. No. 1-1 at 1.  At all relevant times, Barbosa was a hearing officer at Mid-State CF.  *See* Dkt. No. 9 at 11-12; Dkt. No. 1-1 at 2.

## C.  **Plaintiff's Facts**

---

[5] The Court has provided plaintiff with copies of all unpublished cases cited within this Report-Recommendation and Order.

Plaintiff alleges during the week of August 11, 2023, while housed at Mid-State CF he was taken to Hamilton's office and questioned about a number of "slips" Hamilton received from confidential informants stating that plaintiff was "trying to get" a fellow inmate named "J.J." "cut." Dkt. No. 9 at 4-5. Plaintiff denied knowing J.J. and stated that there was no reason for anyone to get cut. *See id*. at 5. During the week of September 11, 2023, plaintiff was again taken to Hamilton's office and asked about "slips" Hamilton received about plaintiff wanting to get another inmate, "DOT", "cut." Dkt. No. 9 at 5-6. Plaintiff denied knowing DOT and stated, "I have no need to cut anyone." *Id*. at 6. Hamilton then showed plaintiff several photographs of different inmates and questioned plaintiff about the inmates in the photographs, whether he knew any of them, and if he was in a gang. *See id*. at 6-7. Plaintiff denied knowing any of the inmates in the photographs and denied being in a gang. *See id*. at 7. Later that week, Hamilton questioned plaintiff about the "kid [that got] cut on the walkway the other day" and various gangs within the prison. *Id*. at 7, *see id*. at 8. Plaintiff stated he did not "have a clue what [Hamilton] was talking about" and denied being in a gang. *Id*. at 8.

On September 29, 2023, Hamilton awoke plaintiff in his cell, escorted him to an empty room in the housing unit, and proceeded to question him about a fellow inmate named "Blick." Dkt. No. 9 at 9. Hamilton claimed that Blick placed a "hit" on one of the sergeants at Mid-State CF. *Id*. Plaintiff denied knowing Blick or anything about the alleged hit. *See id*. at 9-10. Later that day, Hamilton filed a misbehavior report against plaintiff, charging him with violating prison rules on threats, gangs, assault on staff, and violent conduct. *See* Dkt. No. 1-1 at 1. The misbehavior report states that Hamilton, "investigated a serious threat made against a sergeant at [Mid-State CF]" and alleged

that plaintiff and another inmate planned to have a group of inmates assault a sergeant at Mid-State CF on October 1, 2023. *Id.* The misbehavior report further alleged that plaintiff was a "high-ranking member[] of the [u]authorized group known as the 'bloods'" and that he "created a plan for other lower ranking members" in the group to assault the sergeant in the mess hall. *Id.* Hamilton based the report on "interviews from multiple confidential informants who have provided confidential information that has been reliable in the past." *Id.* That same day plaintiff was moved from Mid-State CF to the Marcy Correctional Facility ("Marcy CF"). *See* Dkt. No. 9 at 10.

On October 4, 2023, a disciplinary hearing was held before Barbosa. Dkt. No. 1-1 at 2. Plaintiff was found guilty on charges of violent conduct, assault on staff, and gangs. *See id*; *also* Dkt. No. 9 at 10. In reaching this determination, Barbosa concluded that having

> independently assessed the reliability of the confidential information Sgt. Hamilton relied upon to author this MBR [Misbehavior Report], I find that the confidential sources and confidential information are substantially reliable, and I find their allegations to be credible. In a nutshell, [inmate] Coleman was not able to establish that the information the confidential sources provided was erroneous.

*Id*. at 3.

Plaintiff asserts that on February 5, 2024, he filed a grievance with Mid-State CF by addressing the grievance to "I.G.R.C. at Midstate [CF]" and placing "an addressed envelope inside [the] U.S. postal mailbox located at" Auburn CF. Dkt. No. 30. at 2. Plaintiff did not receive a response or reference filing number to his February 5, 2024, grievance. *See id*. On February 12, 2024, he appealed the grievance to the Superintendent of Mid-State CF by submitting a letter requesting that the Superintendent "render a decision" on his grievance. *See id*. On February 21, 2024, after not receiving

a response from the Superintendent, plaintiff wrote a letter "to the I.G.P." of Mid-State CF requesting a decision on his grievance. *See id*. at 2-3. After plaintiff did not receive a response to his February 21, 2024, letter, he wrote to CORC. *See id*. at 3. Plaintiff commenced this action when he did not receive a response from CORC. *See id.*

### D.  **Defendants' Facts**

Plaintiff's claims are the proper subject for a grievance. *See* Dkt. No. 26-10 at 3. Plaintiff never filed any grievance alleging a violation of his First Amendment rights stemming from the alleged events of September 29, 2023. *See* Dkt. No. 26-10 at 3. Plaintiff never filed any grievance against Hamilton at either Mid-State CF or Gouverneur CF related to the alleged events of September 29, 2023. *See* Dkt. Nos. 26-2 at 4; 26-5 at 4. Plaintiff did not file any grievances generally while housed at Mid-State CF. *See* Dkt. Nos. 26-2 at 4. Neither the Mid-State CF, nor the Gouverneur CF, grievance offices received any written correspondence from plaintiff regarding the alleged events of September 29, 2023. *See* Dkt. Nos. 26-2 at 4; 26-5 at 4. Plaintiff did not appeal any grievance alleging First Amendment retaliation against Hamilton to CORC. *See* Dkt. No. 26-8 at 4.

### II.  **Motion for Summary Judgment**

### A.  **Legal Standard**

On review of defendants' motion for summary judgment, the facts will be related in the light most favorable to plaintiff as the nonmoving party. *See Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and

draw all factual inferences in favor of the party against whom summary judgment is sought.").

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citation omitted). Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); *see also Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or

denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude. *See Treistman*, 470 F.3d at 477. As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

*Id.* (citations omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

B. **Discussion**

1. **Arguments**

Defendants argue that they are entitled to summary judgment as matter of law on plaintiff's First Amendment retaliation claim against Hamilton because plaintiff failed to exhaust his administrative remedies. *See* Dkt. No. 26-11 at 9-10. Defendants acknowledge that plaintiff's allegations stem from a September 29, 2023, incident in which plaintiff claims that Hamilton allegedly issued him a false misbehavior report for refusing to provide Hamilton with information. *See id.* at 9. Defendants also acknowledge that plaintiff's claims are the proper subject for a grievance. *See id*. However, defendants

argue that plaintiff had "until October 20, 2023, to file a grievance related to this incident, or until November 13, 2023, to request an extension of time" and plaintiff failed to do either. *Id*. Defendants further argue that plaintiff did not "appeal the denial or non-response of any grievance concerning his retaliation claim against [] Hamilton to CORC." *Id*. Defendants' note that plaintiff appealed the Superintendent's hearing determination, but such an appeal does not constitute a grievance and cannot be considered proper exhaustion. *See id*. at 10.

Alternatively, defendants argue that plaintiff admitted he filed an untimely grievance and "did not begin the grievance process until February 5, 2024, while housed at Auburn Correctional Facility . . . more than three months past the 21-day deadline to file his grievance." Dkt. No. 31 at 5. Finally, defendants state that plaintiff "subsequently utilized IGP on December 14, 2023, for an unrelated issue, demonstrating his knowledge and familiarity with IGP, as well as the exhaustion process through CORC." *Id*. at 9-10. Concerning plaintiff's state law claims, defendants argue that plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See* Dkt. No. No. 26-11 at 11-12 (citing N.Y. Correct. Law § 24).

In support of their motion, defendants submit copies of sworn declarations from Chris Tapia, IGP Supervisor at Mid-State CF; Laura Hutchins, IGP Supervisor at Gouverneur CF; and Rachael Seguin, IGP Director for DOCCS. *See* Dkt. Nos. 26-2; 26-5; 26-8. These declarations attest that plaintiff was housed at each facility in September 2023 and October 2023; that plaintiff failed to file any facility-level grievance against Hamilton or alleging retaliation by Hamilton; and that plaintiff did not appeal any grievance to CORC. *See* Dkt. Nos. 26-2 at 3-4; 26-5 at 3-4; 26-8 at 3-4.

Plaintiff argues that he is "fully aware of the whole grievance process, as well as having participated in an unrelated evidentiary hearing concerning the exhaustion of administrative remedies" and "took every step to exhaust his administrative remedies before bring[ing] this action before this Court." Dkt. No. 30 at 1-2. Plaintiff states that if he wanted to file a grievance with a facility at which he was previously housed, after having been transferred to another facility, he would have to mail a grievance to the first facility where the incident giving rise to the grievance took place. *See* Dkt. No. 30-2 at 2-3. Plaintiff states that this is the exact process that he followed in filing the grievance forming the basis of this action. *See id*. In support of this argument, plaintiff attaches a copy of a purported grievance, dated February 5, 2024, as well as copies of the letter correspondence alleging that he did not receive a decision on his grievance and attempting to appeal the grievance to each level of the grievance procedure. *See* Dkt. No. 30 at 4-16.

On the other hand, plaintiff argues that the grievance procedure at Mid-State CF "was not made available to him." Dkt. No. 30-1 at 6. He also claims that he believed he would be permitted to "begin to exhaust his administrative remedies" after receiving an administrative reversal on the Superintendent hearing decision and in fact "began his grievance process after [he] received an administrative reversal." *Id*. at 6-7, 9. Plaintiff further argues that Hamilton and the other employees at Mid-State CF "worked together to prevent [him] from following through with his litigation further preventing [him] the ability to exhaust his administrative remedies." *Id*. at 9-10.[6]

---

[6] Plaintiff also argues that he objected to the misbehavior report and the disciplinary hearing process overall during the October 4, 2023, disciplinary hearing before Barbosa. *See* Dkt. No. 9 at 11. Plaintiff states that he was not afforded an opportunity to (1) submit questions to the hearing officer to be asked to the confidential informant or (2) refute any evidence proffered by the confidential informant or Hamilton. *See*

2. **Exhaustion of Administrative Remedies**

a. **Legal Standard**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration. *See* 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. *See id.* at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated." *Adams v. Annucci*, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); *see Jones v. Bock*, 549 U.S. 199, 218 (2007) (explaining that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules . . . rules that are defined not by the PLRA, but by the prison grievance process itself.") (internal citations and quotations omitted).

"Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). A defendant satisfies this burden by "establishing . . . that a grievance

---

*id.* at 11. The undersigned notes plaintiff's arguments but will not address them further in the context of defendants' motions because these arguments are the subject of plaintiff's Fourteenth Amendment due process claim(s).

process exists[,]" and that the plaintiff failed to use the grievance procedure. *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (first citing *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003), then citing *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999)). "However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." *Coleman v. Nolan*, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).

Once it is determined that a plaintiff has failed to exhaust his or her administrative remedies, "the Court must assess whether administrative remedies were available to" the plaintiff. *Stephanski v. Allen*, No. 9:18-CV-76 (BKS/CFH), 2020 WL 806331, at *7 (N.D.N.Y. Jan. 22, 2020), *report and recommendation adopted*, 2020 WL 777268 (N.D.N.Y. Feb. 18, 2020). "[T]he ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendants." *Nelson v. Plumley*, No. 9:12-CV-422 (TJM), 2015 WL 4326762, at *8 (N.D.N.Y. July 14, 2015) (citations omitted). However, "'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was unavailable[.]" *Coleman*, 2018 WL 4732778, at *4.

Here, there is no genuine dispute that, at all relevant times, DOCCS had in place a three-step inmate grievance program. *See* 7 N.Y.C.R.R. § 701.5. First, the inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one (21) calendar days of the alleged incident. *See id.* § 701.5(a). The IGRC then "has up to 16 calendar days after a grievance is filed to resolve [the grievance] informally." *Id*.

§ 701.5(b)(1). If there is no informal resolution, the IGRC conducts a hearing "within 16 calendar days after receipt of the grievance" and issues a written recommendation "within two working days" after the conclusion of the hearing. *Id*. § 701.5(b)(2); (b)(3)(i). Grievances filed after twenty-one days of the alleged incident are generally deemed untimely, however, an inmate may request an extension of time to file a grievance within forty-five days of the alleged incident "based on mitigating circumstances." *Id*. §§ 701.5(a); 701.6(g)(1)(i)(a).

Second, if the inmate is dissatisfied with the IGRC's decision, the inmate may appeal the IGRC's decision to the facility's superintendent. *See* 7 N.Y.C.R.R. § 701.5(c)(1). To initiate such appeal, the inmate "must complete and sign the appeal section on the IGRC response form . . . and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response." *Id*. For matters concerning institutional issues, "the superintendent shall render a decision on the grievance and transmit said decision, with reasons stated, to the grievant, the grievance clerk, and direct party, if any, within 20 calendar days from the time the appeal was received." *Id*. § 701.5(c)(3)(ii). "If a [IGRC] decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance." *Id*. § 701.5(c)(4). Alternatively, "[i]f no appeal is filed upon denial by the IGRC, it will be presumed that the grievant or direct party accepts the committee's recommendation." *Id*. § 701.5(c)(1).

Third, the inmate may appeal the superintendent's decision to the CORC. *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i). To initiate an appeal to CORC, the inmate "must complete and sign [the necessary forms] and submit [them] to the grievance clerk within seven

14

calendar days after receipt of the superintendent's written response to the grievance." *Id*. The IGRC Supervisor "must forward appeals within seven calendar days to . . . CORC." *Id*. § 701.5(d)(1)(ii). Upon receipt of an appeal, CORC "shall review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the grievant, the grievance clerk, the superintendent, and any direct parties within 30 calendar days from the time the appeal was received." *Id.* § 701.5(d)(3)(ii). It is only after CORC renders a final decision, and the inmate receives that final decision, that the administrative remedies available to the inmate/claimant are exhausted. *See Torres v. Carry*, 672 F.Supp. 2d 338, 344 (S.D.N.Y. 2009).

b. **Analysis**

Viewing the evidence in the light most favorable to the plaintiff as the non-moving party and affording him special solicitude, plaintiff failed to rebut or raise a "genuine dispute as to any material fact**"** regarding defendants' assertion that he did not properly exhaust his administrative remedies concerning his claims that Hamilton retaliated against him by filing a misbehavior report on September 29, 2023. FED. R. CIV. P. 56(a); *see Wright*, 554 F.3d at 266; *Hicks*, 593 F.3d at 166.

The parties agree that plaintiff attempted to file a grievance on February 5, 2024, alleging that Hamilton retaliated against him by filing a misbehavior report on September 29, 2023. *See* Dkt. No. 31 at 5; No. 30 at 4-16. As the alleged incident occurred on September 29, 2023, plaintiff had until October 20, 2023, to file a grievance, or until November 12, 2023, to request an extension of time to file a grievance. *See* 7 N.Y.C.R.R. §§ 701.5(a); 701.6(g)(1)(i)(a). However, plaintiff neither filed a grievance by October 20, 2023, nor requested an extension of time to file a grievance by November 13, 2023.

Moreover, plaintiff has not alleged that he attempted to file a grievance by October 20, 2023, or request an extension of time to file a grievance by November 13, 2023, or allege any mitigating circumstances that prevented him from doing so. *See generally* Dkt. Nos. 30, 32. Accordingly, the undersigned concludes that plaintiff's February 5, 2024, grievance is untimely, and plaintiff failed to exhaust his administrative remedies prior to commencing this action. *See* 7 N.Y.C.R.R. §§ 701.5(a); 701.6(g)(1)(i)(a); *Mont v. Wells*, No. 9:22-CV-215 (DNH/ATB), 2023 WL 5018571, at *7, n.7 (N.D.N.Y. June 5, 2023), *report and recommendation adopted,* No. 9:22-CV-215, 2023 WL 4361232 (N.D.N.Y. July 6, 2023) (quoting *Harris v. Buskey*, No. 9:21-CV-470 (LEK/CFH), 2022 WL 2663421, at *1 (N.D.N.Y. July 11, 2022) (quoting *Adams v. Ohara*, No. 16-CV-527 (GTS/ATB), 2019 WL 652409, at *7 (N.D.N.Y. Feb. 15, 2019))) ("[F]iling an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies."); *Ferguson v. Mason*, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *9 (N.D.N.Y. Jan. 7, 2021), *report and recommendation adopted,* No. 9:19-CV-927 (GLS/ATB), 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021) (quoting *Adams*, 2019 WL 652409, at *7 (same; *Elleby v. Martingano*, No. 9:20-CV-693 (LEK/ML), 2022 WL 18604, at *2 (N.D.N.Y. Jan. 3, 2022) (quoting *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006)) ("[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.");; *Feliz v. Johnson*, No. 9:17-CV-1294 (DNH/ATB), 2019 WL 5197216, at *4 (N.D.N.Y. June 6, 2019), *report and recommendation adopted*, 2019 WL 3491232 (N.D.N.Y. Aug. 1, 2019) (citations omitted) ("[I]f a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing

litigation, he has failed to exhaust his administrative remedies as required under the PLRA.");

To the extent that plaintiff believed he could file a grievance after he received an administrative reversal of the Superintendent hearing decision and in fact "begun his grievance process after [he] received an administrative reversal"[,] this argument is equally unavailing.  Dkt. No. 30-1 at 6-7, 9.  Plaintiff's appeal of the Superintendent's hearing decision cannot act as a substitute for filing a grievance and the appeal of the Superintendent's hearing decision does not toll the statutory deadlines for filing an IGRC grievance.  *See* 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a) ("The IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances" but an extension of time "may not be granted if the request was made more than 45 days after an alleged occurrence."); *Thomas v. Delaney*, No. 9:17-CV-1023 (GLS/CFH), 2019 WL 4247807, at *10 (N.D.N.Y. Aug. 13, 2019), *report and recommendation adopted,* No. 9:17-CV-1023 (GLS/CFH), 2019 WL 4242268 (N.D.N.Y. Sept. 6, 2019) (quoting *Barker v. Smith*, No. 16-CV-76 (NSR), 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017) (quoting *Scott v. Gardner*, 287 F. Supp. 2d 477, 489 (S.D.N.Y. 2003), *on reconsideration in part,* 344 F. Supp. 2d 421 (S.D.N.Y. 2004), *and on reconsideration in part,* 2005 WL 984117 (S.D.N.Y. Apr. 28, 2005))) ("Courts in this District have held that [t]hough a disciplinary appeal is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary hearing, allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved.") (internal quotation marks omitted); *Labounty v. Johnson*, 253 F. Supp. 2d 496, 501 (W.D.N.Y. 2003) (citation omitted) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a

[constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance."); *Toliver v. Adner*, No. 9:18-CV-1420 (DNH/ATB), 2019 WL 3503059, at *3 (N.D.N.Y. June 3, 2019), *report and recommendation adopted,* No. 9:18-CV-1420 (DNH/ATB), 2019 WL 3497099 (N.D.N.Y. Aug. 1, 2019), *aff'd,* 836 F. App'x 68 (2d Cir. 2020) (quoting *Kimbrough v. Fischer*, No. 9:13-CV-100 (FJS/TWD), 2014 WL 12684106, at *6 (N.D.N.Y. Sept. 29, 2014), *report and recommendation adopted,* No. 9:13-CV-100 (FJS/TWD), 2016 WL 660919 (N.D.N.Y. Feb. 18, 2016) ("The grievance process is separate from the process of appealing the outcome of a disciplinary hearing, and an inmate 'cannot adequately exhaust his remedies for PLRA purposes through his administrative appeal of the hearing decision; he must separately grieve the [defendant's] alleged misconduct . . . .").

As discussed above, plaintiff stated that he is "fully aware of the whole grievance process, as well as having participated in an unrelated evidentiary hearing concerning the exhaustion of administrative remedies" and "took every step to exhaust his administrative remedies before bring[ing] this action before this Court."  Dkt. No. 30 at 1-2.  However, plaintiff's statement that if he wanted to file a grievance with Mid-State CF after having been transferred to another facility, he would have to mail the grievance to Mid-State CF is legally incorrect.  *See* Dkt. No. 30-2 at 2-3.  Here, plaintiff states that while housed at Auburn CF, he attempted to file a grievance with Mid-State CF by mailing the grievance to Mid-State CF.  Dkt. No. 30. at 2.  The regulations provide that a grievance "may only be filed at the facility where the inmate is housed even if it pertains to another facility."  7 N.Y.C.R.R. § 701.5(a)(1).  "Therefore, these mistaken beliefs do not excuse Plaintiff's

failure to exhaust."[7] *Porter v. Uhler*, No. 9:17-CV-47 (MAD/TWD), 2019 WL 1292226, at *5 (N.D.N.Y. Mar. 21, 2019), *aff'd,* 790 F. App;x 329 (2d Cir. 2020) (citing *Ross*, 578 U.S. at 641); *Jackson v. West*, No. 9:23-CV-306 (LEK/PJE), 2025 WL 1033787, at *10 (N.D.N.Y. Feb. 20, 2025), *report and recommendation adopted,* No. 9:23-CV-306 (LEK/PJE), 2025 WL 814966 (N.D.N.Y. Mar. 14, 2025) ("Plaintiff's failure to avail himself of the grievance procedure is based on his ignorance of the training and failure to seek out resources rather than the opacity of the procedure."); *Kendall v. Cuomo*, No. 1:12-CV-3438 (ALC/RLE), 2017 WL 4162338, at *5 (S.D.N.Y. Sept. 19, 2017) (citation omitted) ("[I]gnorance regarding the proper grievance procedure . . . does not change the fact that those remedies were, nevertheless, available."); *Smith v. City of New York*, No. 12 CIV. 3303 (CM), 2013 WL 5434144, at *25 (S.D.N.Y. Sept. 26, 2013) ("[I]gnorance is not an excuse where he had access to materials to learn about the grievance procedure, he was not incorrectly instructed about the grievance procedure, and prison officials did not do anything that objectively prevented him from availing himself of that procedure."). Notwithstanding the timeliness issue discussed above, based on his own statements and actions, plaintiff has not satisfied the first step the of the grievance procedure because he did not file a grievance at Auburn CF concerning the incident that occurred at Mid-State

---

[7] As will be discussed below, although plaintiff raises the issue of unavailability, he does not raise the issue of unavailability in the context of mailing his grievance to Mid-State CF.  *See* Dkt. No. 30.  However, to the extent plaintiff's argument could be interpreted as asserting that the grievance procedure was unavailable to him because it was too opaque, "the Supreme Court [has] found that an inmate's mistaken belief that he has exhausted his administrative remedies, even where that belief seems reasonable, does not make the administrative remedies unavailable."  *Livingston v. Hoffnagle*, No. 9:17-CV-1158 (MAD/DEP), 2019 WL 409366, at *4 (N.D.N.Y. Feb. 1, 2019) (citing *Ross v. Blake*, 578 U.S. 632, 641)

CF.  *See* 7 N.Y.C.R.R. § 701.5(a)(1).  As such, plaintiff failed to satisfy the first step of the grievance procedure and exhaust his administrative remedies.  *See Feliz*, 2019 WL 5197216, at *4.

Accordingly, the undersigned concludes that plaintiff failed to exhaust his administrative remedies prior to commencing this lawsuit because he filed an untimely grievance and did not follow the proper procedure.  *See* 7 N.Y.C.R.R. §§ 701.5(a); 701.6(g)(1)(i)(a); *Mont*, 2023 WL 5018571, at *7, n.7; *Labounty*, 253 F. Supp. 2d at 501; *Toliver*, 2019 WL 3503059, at *3; *Porter*, 2019 WL 1292226, at *5; *Feliz*, 2019 WL 5197216, at *4.

### 3. **Availability of Administrative Remedies**

As plaintiff alleges that the grievance procedure was unavailable to him, and Hamilton and others prevented him from utilizing the grievance system, the undersigned must next assess whether administrative remedies were available to plaintiff.

### a. **Legal Standard**

To successfully allege unavailability, "[a]n inmate must point to some affirmative action by a prison official that prevented the inmate from availing himself of the grievance procedures."  *Martinaj v. Uhler*, No. 9:18-CV-257 (BKS/DJS), 2021 WL 3793769, at *7 (N.D.N.Y. 9Aug. 26, 2021) (citing *Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir. 2019) (citing *Ruggiero*, 467 F.3d at 178)) ("We have held that where there has been no affirmative action by prison staff actually preventing prisoners from pursuing administrative remedies, those remedies are not unavailable under the PLRA."). Examples of prison officials' affirmative acts include verbal and physical threats of retaliation, denial of "forms and writing materials, and a refus[al] to accept or forward [the]

plaintiff's appeals." *Perez v. Furina*, No. 9:10-CV-518 (TJM/CFH), 2016 WL 1237863, at *3 (N.D.N.Y. Jan. 19, 2016), *report and recommendation adopted,* No. 9:10-CV-518, 2016 WL 1238243 (N.D.N.Y. Mar. 29, 2016) (citing *Ruggiero*, 467 F.3d at 175); *see also Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) (holding that "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action.") (first citing *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) *overruled on other grounds* by *Hemphill v. New York*, 595 U.S. 140 (2022), then citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)); *see also Cicio v. Alvarez*, No. 19-CV-9883 (CS), 2022 WL 1003796, at *5 (S.D.N.Y. Apr. 4, 2022) ("Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable.") (quoting *Lutz v. Francisco*, No. 9:20-CV-240 (GTS/DJS), 2020 WL 9264825, *5 (N.D.N.Y. Dec. 10, 2020)).

"[T]he PLRA requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly . . . .'" *Ruggiero*, 467 F.3d at 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 90) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002))) (additional internal quotation marks omitted). The PLRA's "exhaustion requirement hinges on the 'availability' of administrative remedies." *Ross*, 578 U.S. at 642 (brackets omitted) (*quoting Booth v. Churner*, 532 U.S. 731, 738 (2001)). "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* Availability means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (*quoting Booth*, 532 U.S. at 738).

There are "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief." *Ross*, 578 U.S. at 643.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.*  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive," but "illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry."  *Thomas v. Waugh*, No. 9:13-CV-321 (MAD/TWD), 2018 WL 3121622, at *10 (N.D.N.Y. Feb. 28, 2018), *report and recommendation adopted,* No. 9:13-CV-00321, 2018 WL 1508563 (N.D.N.Y. Mar. 27, 2018) (first citing *Williams*, 829 F.3d at 123 n.2 (2d. Cir. 2016), then citing *Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016)).

b.  **Unavailability Generally**

Plaintiff raises two arguments regarding availability.  First, plaintiff argues that the grievance procedure at Mid-State CF "was not made available to him" generally.  Dkt. No. 30-1 at 6.  .  As plaintiff fails to state whether the grievance procedure was unavailable immediately following the September 29, 2023, incident or when he attempted to file his grievance on February 5, 2024, the undersigned will assess both arguments.

i.  **September 29, 2023**

Plaintiff's argument that the grievance procedure was unavailable on September 29, 2023, or in the twenty-one days thereafter, amounts to a baseless conclusion. Plaintiff (1) fails to provide any further details or explanation of how the grievance procedure was unavailable to him at this time and (2) acknowledges that he did not attempt to file a grievance or request an extension of time to file a grievance at this time. *See generally* Dkt. Nos. 9, 30. Further, this argument is contradicted by plaintiff's argument discussed above, that he was waiting for his appeal of the Superintendent hearing decision to be resolved before filing a grievance and that he only filed a grievance after the hearing decision was reversed. *See* Dkt. No. 30 at 6-7, 9. Plaintiff cannot simultaneously claim that the grievance procedure was unavailable to him but claim to have held off on using the grievance procedure until his disciplinary appeal was determined.

ii. **February 5, 2024**

Plaintiff's argument that the grievance procedure was unavailable when he attempted to file a grievance on February 5, 2024, is also without merit for several reasons. First, as will be discussed below, plaintiff has not alleged that he was thwarted from "taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Rather, plaintiff states that prison officials at Mid-State CF ignored or refused to accept the grievance and appeals he mailed to the facility. *See* Dkt. No. 30 at 1-3. Second, assuming arguendo, that the Mid-State CF prison official's ignorance or refusal to consider his February 5, 2024, grievance could be viewed as "machination" or "misrepresentation," this argument still does not excuse plaintiff's failure to follow the proper grievance procedure or file a timely grievance. *See* 7 N.Y.C.R.R. § 701.5(a); *Feliz*, 2019 WL 5197216, at *4. Finally, whether the grievance

procedure was available to plaintiff in February 2024 is irrelevant because the time to file a grievance expired and plaintiff did not request an extension of time to file his grievance. *See id*.

### c. **Purported Threats and Intimidation**

Second, plaintiff argues that Hamilton and the other employees at Auburn CF or Mid-State CF "worked together to prevent [him] from following through with his litigation further preventing [him] the ability to exhaust his administrative remedies." Dkt. No. 30-1 9-10. In making this argument, plaintiff references an inmate that was housed at the Mohawk Correctional Facility and transferred to the Marcy CF "where he later died." *Id*. at 10. Plaintiff states that "we saw how 'third party' information travels from one correctional facility to the other facility within the facility hub." *Id*. Affording plaintiff due solicitude, he could be arguing that he generally feared for his life and safety if he provided information to Hamilton. Yet, plaintiff does not state, and the record does not indicate, that this "threat" contained any reference to the grievance procedure, any grievance plaintiff filed, or that he decided against filing a grievance because he feared for his safety. *See Scott v. Cambisi,* No. 20-CV-6388 (MWP), 2024 WL 867102, at *11 (W.D.N.Y. Feb. 29, 2024) ("Although acts of intimidation need not be tied narrowly to a particular grievance, they cannot be *wholly unrelated* to the grievance process.") (internal citations and quotations omitted).

Further, plaintiff fails to specify any "affirmative action by a prison official that prevented [him] from availing himself of the grievance procedures." *Martinaj*, 2021 WL 3793769, at *7. Plaintiff does not describe any type of verbal or physical threat, allege that he was denied forms or writing materials, or claim that Hamilton or other corrections

staff refused to forward his grievance or threatened to transfer him to another facility. *See Perez*, 2016 WL 1237863, at *3; *Amador*, 655 F.3d at 103. Plaintiff does not allege threats of violence, retaliation, or any form of retribution against him if he chose to pursue a grievance, nor does plaintiff contend that he was in fear of retaliation or retribution or that such fear deterred him from filing a grievance. *See Scott*, 2024 WL 867102, at *11 ("The deficiency in [the plaintiff's] argument is that he has not adduced any admissible evidence that in fact a fear of retribution deterred him from filing a grievance, regardless of whether such a fear could be considered objectively reasonable.") (citations omitted); *Cf. Hunter v. Rouse*, No. 9:20-CV-65 (LEK/DJS), 2020 WL 8474744, at *4 (N.D.N.Y. Sept. 17, 2020), *report and recommendation adopted*, 2021 WL 101083 (N.D.N.Y. Jan. 12, 2021) (holding that the plaintiff's allegation that a defendant "told him that if he told 'anyone what happened, the next time [the plaintiff] won't walk away[,]'" was "more than a generalized fear of retaliation[,]" and, therefore, "sufficiently reasonable to render administrative remedies unavailable."); *Galberth v. Durkin*, No. 9:14-CV-115 (BKS/ATB), 2014 WL 7409915, at *8 (N.D.N.Y. Dec. 31, 2014) (holding that the defendants' threats that the plaintiff "would be beaten within an inch of his life" if he told anyone about the alleged assault was more than a generalized fear of retaliation and excused the plaintiff's failure to exhaust). Accordingly, as plaintiff has failed to demonstrate that defendants' purported threats prevented him from "taking advantage of a grievance process through machination, misrepresentation, or intimidation," the undersigned concludes that he has failed to show unavailability on this ground. *Ross*, 578 U.S. at 644.

Conversely, assuming *arguendo* and affording plaintiff due solicitude, that plaintiff's claims could be interpreted has demonstrating that Hamilton or other corrections staff

threatened plaintiff with violence, retaliation, or retribution and prevented him from filing a

grievance immediately after the September 29, 2023, incident, plaintiff filed a grievance

for an unrelated issue on December 14, 2023, and attempted to file a grievance in this

matter on February 5, 2024.  *See* Dkt. Nos. 26-5 at 4, 26-6 at 2, 26-7 at 2-8; Dkt. No. 30

at 4.   "[T]he Second Circuit has concluded that when an inmate files a grievance,

notwithstanding the threats of retaliation and intimidation of which that inmate complains,

the failure to fully exhaust under the PLRA will not be excused on this ground."  *Grant v.*

*Kopp*, No. 9:17-CV-1224 (GLS/DEP), 2019 WL 368378, at *6 (N.D.N.Y. Jan. 3, 2019),

*report and recommendation adopted,* No. 9:17-CV-1224 (GLS/CFH), 2019 WL 367302

(N.D.N.Y. Jan. 30, 2019) (citing *McNab v. Doe*, 686 F. App'x. 49, 51 (2d Cir. 2017),

*affirming* 2016 WL 324994 (N.D.N.Y. Jan. 27, 2016) (Suddaby, C.J.)).   In reaching this

conclusion, the Second Circuit noted that:

> [Plaintiff] asserted that defendants tried to intimidate him, and intimidation
> can excuse the failure to exhaust. However, none of the actions allegedly
> taken by the defendants actually prevented [plaintiff] from submitting his
> complaint letter. [Plaintiff] was able to take the first step in the grievance
> process, and nothing in the record suggests he was intimidated from taking
> the next step (appealing the rejection of his informal grievance).

*McNab*, 686 F. App'x at 51 (internal citations omitted).

The undersigned concludes that because plaintiff continued to avail himself of the

grievance procedure immediately following these alleged threats, plaintiff was not

prevented from "taking advantage of a grievance process through machination,

misrepresentation, or intimidation."  *Ross*, 578 U.S. at 644.  Thus, he has failed to show

unavailability on this ground.  *See id*.

### d. **First and Second *Ross* Exceptions**

In the interest of thoroughness, the undersigned will also address the first and second *Ross* exceptions. As stated above, the first *Ross* exception applies when the grievance procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[,]" while the second *Ross* exception applies when the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Ross*, 578 U.S. at 643. Plaintiff has not alleged that the grievance procedures at either Mid-State CF, Gouverneur CF, or Marcy CF were "dead end[s]" or "so opaque" as to be rendered "incapable of use." *Ross*, 578 U.S. at 643. Plaintiff stated that he is "fully aware of the whole grievance process, as well as having participated in an unrelated evidentiary hearing concerning the exhaustion of administrative remedies" and "took every step to exhaust his administrative remedies before bring[ing] this action before this Court." Dkt. No. 30 at 1-2. Plaintiff also stated that "at all times [he] was fully aware that before he could bring a claim before this Court, he would have to exhaust all his administrative remedies." Dkt. No. 30-1 at 6. After the September 29, 2023, incident, plaintiff filed a grievance related to a medical issue on December 14, 2023, and attempted to file a grievance relating to the September 29, 2023, incident, on February 5, 2024. *See* Dkt. Nos. 26-5 at 4, 26-6 at 2, 26-7 at 2-8, 30 at 4. "This shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance." *Walker v. Ball*, No. 9:16-CV-437 (DNH/DJS), 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted,* No. 9:16-CV-437 (DNH/DJS), 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018) (citing *Gonzalez v. Coburn*, No. 6:16-CV-06174 (MAT), 2017 WL 6512859,

at *6 (W.D.N.Y. Dec. 20, 2017) (additional citation omitted)) ("Plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that Plaintiff could not avail himself of it."). *"As such, the first two exceptions identified under *Ross* are not applicable here." *Id*.

### 4. **Time to File a Grievance has Expired**

Here, the alleged incident took place on September 29, 2023. *See* Dkt. No. 9 at 8-10; No. 30 at 4-16. Plaintiff had until October 20, 2023, to file a grievance with IGRC. *See* 7 N.Y.C.R.R. § 701.5(a) ("An inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form."). Plaintiff also had until November 13, 2023, to request an extension of time to file a grievance. *See* 7 N.Y.C.R.R. § 701.6(g)(1) (An inmate may file a request for an extension of time to file a grievance within forty-five days of the alleged incident.). The record does not indicate, and plaintiff has not asserted, that he attempted to file a grievance by October 20, 2023, or that he requested an extension of time to file his grievance at any time. Although plaintiff attempted to file a grievance on dated February 5, 2024, as discussed above, this grievance was untimely. *See* Dkt. No. 30 at 4.

"Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." *Robinson v. Harder*, No. 9:21-CV-1322 (DNH/CFH), 2024 WL 1469076, at *9 (N.D.N.Y. Feb. 20, 2024) (first quoting *Brown v. Napoli*, No. 08-CV-6477L (DGL), 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009), then citing *Chisholm v. N.Y.C. Dep't of Corr.*, No. 08-CV-8795, 2009 WL 2033085,

at *3 (S.D.N.Y. July 13, 2009)).  "This is so even when the issue is decided on a motion for summary judgment."  *Mateo v. Corebine*, No. 9-CV-4811 (RJH/DCF), 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases).  However, if an inmate has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile.  *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see also Richard v. LeClaire*, 9:15-CV-0006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019), *report and recommendation adopted*, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice.").

Plaintiff's failure to exhaust his available administrative remedies relating to the alleged incident on September 29, 2023, is no longer curable.   The time for plaintiff to exhaust his administrative remedies has expired.  Also, plaintiff has not demonstrated that the grievance procedure was unavailable to him.  Accordingly, it is recommended that defendants' motion for summary judgment be granted as to plaintiff's First Amendment retaliation claim and this claim be dismissed with prejudice.  *See Berry*, 366 F.3d at 88. Subsequently, as there is "no genuine dispute as to any material fact" as to whether the grievance procedure was available to plaintiff and to whether plaintiff failed to exhaust, the undersigned recommends denying plaintiff's motion for an evidentiary hearing as a matter of law.  FED. R. CIV. P. 56(a).

IV.  **Motion to Dismiss**

A.  **Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."[8]  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Holmes v. Grubman*, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must "'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."));  *see also Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

---

[8] Although defendants move to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, Judge Nardacci permitted plaintiff's state law defamation and slander claims to proceed after initial review. *See* Dkt. No. 10 at 15-16.  Thus, the Court already determined that it has subject matter and pendent jurisdiction over these claims.  *See id.*  However, in reaching this determination, Judge Nardacci stated that "the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion."  *Id.* at 16.  Accordingly, the undersigned will analyze the merits of plaintiff's claim under Rule 12(b)(6) and determine whether there is a viable cause of action.

B. **Arguments**

Defendants argue that plaintiff's claims should be dismissed because they are barred by Section 24 of the New York State Correction Law.  Dkt. No. 26-11 at 10-12.  Defendants assert that Section 24 affords immunity to all DOCCS employees from liability and damages "arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." *Id*. at 11 (citing N.Y. Correct. Law § 24(1); *see id*. at 12.  Defendants state that Hamilton and Barbosa were acting within the scope of their employment as a corrections officer and a hearing officer, and therefore, any claims against them in their personal capacities are statutorily barred.  *See id*. at 11-12.

Plaintiff does not respond to defendants' arguments.  *See generally* Dkt. Nos. 30, 32.  The undersigned notes that plaintiff alleges that he was defamed and slandered by false "statements made by defendant Hamilton in a misbehavior report, and during plaintiff's disciplinary hearing, and by defendant Barbosa in a disciplinary decision."  Dkt. No. 10 at 16; *See* Dkt. No. 1 at 4.

C. **Analysis**

Section 24 of the New York State Correction Law provides that

No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department . . .  in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Correct. Law § 24(1).  "An employee's actions are deemed to be within the scope of their employment when 'the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.'"  *Henderson v. Popp*,

No. 9:22-CV-242 (AMN/MJK), 2025 WL 1033853, at *25 (N.D.N.Y. Mar. 4, 2025), *report and recommendation adopted,* No. 9:22-CV-242 (AMN/MJK), 2025 WL 942801 (N.D.N.Y. Mar. 28, 2025), *aff'd as modified,* No. 9:22-CV-242 (AMN/MJK), 2025 WL 1427876 (N.D.N.Y. May 19, 2025) (quoting *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997)).

> For purposes of New York Correction Law [Section] 24, the courts have looked to the following factors to determine whether actions fall within the actor's scope of employment:
>
> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Balentine v. Shurgot*, No. 9:22-CV-285 (MAD/ML), 2023 WL 6622034, at *7–8 (N.D.N.Y. Oct. 11, 2023) (quoting *Francis v. Fiacco*, No. 9:15-CV-901, 2016 WL 3448617, *4 (N.D.N.Y. June 20, 2016) (quoting *Ierardi*, 119 F.3d at 187)).

 "Employees are considered to be acting within the scope of their employment so long as they are carrying out their assigned duties, 'no matter how irregularly, or with what disregard of instructions.'"  *Balentine v. Anzalone*, No. 9:21-CV-1383 (LEK/CFH), 2023 WL 4905093, at *3 (N.D.N.Y. July 12, 2023), *report and recommendation adopted,* No. 9:21-CV-1383 (LEK/CFH), 2023 WL 4887454 (N.D.N.Y. Aug. 1, 2023) (quoting *Bernardi v. New York State Dep't of Corr.*, No. 19-CV-11867 (KMK), 2021 WL 1999159, at *5 (S.D.N.Y. May 19, 2021)) (additional citation omitted).  "Employees . . . are not found to be acting within their employment scope when their conduct, while in the course of employment, is for purely personal reasons unrelated to the employer's interests and a substantial departure from the normal methods of performing [their] duties." *Balentine*, 2023 WL 6622034, at *8 (quoting *Balentine*, 2023 WL 4905093, at *3) (additional citations

and quotation marks omitted); *Cf. Livingston v. Griffin*, No. 9:04-CV-607 (JKS), 2007 WL 2437433, at *2 (N.D.N.Y. Aug. 22, 2007) ("New York courts have held that § 24(1) is inapplicable where the act is committed solely for personal reasons unrelated to the employer's interests.").

Here, all of plaintiff's allegations arise from Hamilton's investigation into a threat against a corrections officer at Mid-State CF, and the statements made by Hamilton and Barbosa in the misbehavior report, during the disciplinary hearing, and in the disciplinary decision. *See* Dkt. Nos. 1 at 4; 10 at 16. Defendants argue that all of their actions relating to this matter were within the scope of their employment as a corrections officer and hearing officer, and therefore, they are immune to suit. *See* Dkt. No. 26-11 at 10-12. The undersigned agrees.

Even viewing the evidence in the light most favorable to plaintiff as the non-moving party, plaintiff fails to allege that any of the actions taken, or statements made, by Hamilton or Barbosa fell outside the scope of their employment. It is reasonable to conclude that each action taken by Hamilton and Barbosa giving rise to plaintiff's claims, i.e. (1) investigating an inmate's threat against corrections officers; (2) drafting and filing a misbehavior report; (3) testifying at and conducting a disciplinary hearing; and (4) drafting and issuing a disciplinary decision, are common tasks that fall within the scope of Hamilton and Barbosa's duties a corrections officer and hearing officer. *See Balentine*, 2023 WL 6622034, at *7–8; *Balentine*, 2023 WL 4905093, at *3. More specifically, these actions satisfy the criteria set forth in *Ierardi*. *See Ierardi*, 119 F.3d at 187. All acts giving rise to plaintiff's state law claims occurred at Mid-State CF. *See generally* Dkt. No. 1. The misbehavior report was filed the same day the investigation was completed. *See*

Dkt. No. 1-1 at 1.  The disciplinary hearing was held five days after the misbehavior report was filed.  *See id*. at 2.  The disciplinary hearing decision was issued the same day the disciplinary hearing was completed.  *See id*. at 2-7.  To the extent that either Hamilton or Barbosa "depart[ed] from normal methods of performance," plaintiff challenged the disciplinary hearing decision and the decision was reversed.  *See id*. at 9.  Additionally, it is reasonable for DOCCS to anticipate Hamilton and Barbosa would perform these functions in the course of their employment duties.  *See Ierardi*, 119 F.3d at 187.

Therefore, the undersigned concludes that all actions taken Hamilton and Barbosa were in the scope of employment as a corrections officer and a hearing officer.  Thus, plaintiff's state law defamation and slander claims are barred by Section 24 of the New York State Correction Law.  *See* N.Y. Correct. Law § 24(1); *Balentine*, 2023 WL 6622034, at *8 (quoting *Balentine*, 2023 WL 4905093, at *3); *Foskey v. Northrup*, No. 9:20-CV-504 (LEK/TWD), 2025 WL 1920379, at *4 (N.D.N.Y. May 6, 2025) (quoting *Davis v. McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017)) ("Courts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment."); *Henderson*, 2025 WL 1033853, at *26 ("Plaintiff does not respond to this argument.  As there are no allegations that Defendants were acting outside of the scope of their employment and in the discharge of their duties, the statutory bar imposed by Corrections Law § 24 is applicable."); *Arriaga v. Annucci*, No. 23-CV-1941 (VB), 2024 WL 1743300, at *6–7 (S.D.N.Y. Apr. 23, 2024) ("Here, plaintiff does not allege any defendant acted outside the scope of their DOCCS employment . . . Accordingly, plaintiff's state law claim[] for . . . slander *per se*, and fraud must be dismissed.").

Accordingly, the undersigned recommends that defendants' motion to dismiss be granted in its entirety and plaintiff's state law defamation and slander claims be dismissed with prejudice.

## V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 26) be **GRANTED**, and plaintiff's amended complaint (Dkt. No. 9) as alleging a First Amendment retaliation claim against defendant J. Hamilton be **DISMISSED in its entirety with prejudice**; it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 26) be **GRANTED**, and plaintiff's amended complaint (Dkt. No. 9) as alleging New York State law defamation and slander claims against defendants J. Hamilton and Barbosa be **DISMISSED in its entirety with prejudice**; it is further

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 30) requesting an evidentiary hearing be **DENIED**; it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*,

984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892

F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.[9]

    Dated:  August 29, 2025
             Albany, New York

                           Paul J. Evangelista
                           U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id*. § 6(a)(1)(C).